UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GAMAL BROWN,<br><br>       *Plaintiff*,<br>  v.<br><br>POTOMAC ELECTRIC POWER COMPANY,<br><br>       *Defendant*. | Civil Action No. 17-1131 (TJK) |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Gamal Brown's Motion to Remand or Amend his Complaint, ECF No. 7, and Defendant's Motion to Dismiss, ECF No. 5. For the reasons set forth below, Brown's motion is (1) denied as to remand, and (2) denied without prejudice as to the amendment of his complaint. The Court will order Brown to file a motion to amend that complies with the Local Rules within 30 days. As a result, Defendant's Motion to Dismiss is denied as moot.

### I.    Factual Background

For purposes of these motions, the Court assumes the truth of the facts set forth in Brown's complaint. On June 1, 2015, Brown was hired by the Defendant Potomac Electric Power Company ("Pepco") as a Substation Technician Trainee. ECF No. 1 ("Removal Not."), Ex. A ("Compl.") ¶ 4. This position required Brown to hold a valid driver's license. Compl. ¶ 33. The position was also covered by a collective bargaining agreement (the "CBA"), and by virtue of his being hired, Brown became a member of a union. *See id.* ¶¶ 22, 24-25, 32, 34-35; Removal Not., Ex. E ("Davis Decl."), Ex. 1 (CBA). The CBA regulated the bargaining, CBA § 2.01, promotion, *id.* at § 8.09, and discharge, *id.* at §§ 16.01-16.05, of covered employees.

On August 4, 2016, Brown applied for a promotion to the position of "Helper-Transformer Tester NERC," another position covered by the CBA. Davis Decl. ¶ 7; CBA at 85. He was given a conditional offer for that position on October 3, 2016. Compl. ¶¶ 5-6. One of the conditions of Brown's promotion was that he obtain a Department of Transportation ("DOT") medical card within six months. *Id.* ¶ 7. Obtaining this card required passing a DOT physical, including a drug test. *Id.* ¶¶ 7-10.

On October 14, 2016, Brown appeared for his drug test, provided a urine sample which was insufficient to enable the full range of tests to be completed, and left the testing site before providing a second sample. *Id.* ¶¶ 7, 10-12. Around 3:30 p.m. that same day, Brown was advised by Pepco's Senior Recruiter to return to the testing site and complete the test. *Id.* ¶ 14.

Brown returned to the testing site later that day and entered a bathroom stall with a male observer to provide the urine sample. *Id.* ¶ 17. The observer used "vulgar terms" to communicate that he needed to observe the urine leave Brown's body and enter the receptacle. *Id*. Brown then exited the stall and left the testing site, telling a Pepco representative that he felt "sexually harassed" and offering to redo the sample at a later date. *Id.* ¶ 18. Around 5:00 p.m., Pepco advised Brown that because he had failed to complete the drug test, he would be ineligible for the promotion. *Id.* ¶ 21.

On October 27, 2016, Brown, after a meeting with representatives of Pepco and his union, was placed on "Crisis Suspension," a disciplinary procedure outlined in Article 16 of the CBA, as a result of the incomplete drug test. Compl. ¶ 22. During the course of this suspension, Pepco discovered that Brown had not held a valid driver's license since January 2016, and was therefore placed on "Decision Making Leave," the final disciplinary step before discharge

pursuant to CBA Article 16. Compl. ¶ 33. After failing to negotiate the terms of a voluntary resignation, Brown was discharged on March 28, 2017. *Id.* ¶¶ 35-37.

On April 28, 2017, Brown filed this action in the Superior Court for the District of Columbia, alleging a violation of the District of Columbia Human Rights Act, D.C. Code § 2-1401.0 *et seq.*, and a common law breach of contract claim. *See* Compl. ¶¶ 38-48. The breach of contract claim asserts that Pepco had a contractual duty to promote Brown if he possessed a valid driver's license and obtained a DOT medical card within six months of his hire date. *Id.* ¶¶ 40-48. It goes on to allege that Pepco breached this purported contract in a number of ways, including by failing to give Brown the agreed-upon six months to obtain his DOT medical card and failing to treat Brown's departure from the drug testing center as a cancellation, which would have permitted him to take the test again. *Id.* ¶¶ 42-47. The complaint also alleges that Pepco breached its contract by relying on Brown's "Decision Making Leave" status "as the basis for . . . any action . . . relating to [Brown] and his promotion and/or retention" because that status "was limited by it[s] terms to issues related to timely arrival at work." *Id.* ¶ 48.

On June 9, 2017, Pepco removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446 on the ground that Brown's breach of contract claim arises under federal law. Removal Not. at 1-2. Specifically, Pepco argued that the claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, which courts have held has such preemptive force that it converts certain state-law claims into ones arising under federal law. Removal Not. at 2. Pepco then moved to dismiss the complaint, ECF No. 5 ("Def.'s MTD"), while Brown moved to remand the case back to Superior Court or, in the alternative, to amend his complaint, ECF No. 7 ("Remand Mot."); *see also* ECF No. 11 ("Remand Opp.").

3

## II. Legal Standard

### A. Removal

"A defendant may remove a state court action to federal court only if the action could have been filed in federal court in the first instance." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Am. Mar. Officers*, 75 F. Supp. 3d 294, 300 (D.D.C. 2014) (citing 28 U.S.C. § 1441(a)). "Courts must strictly construe removal statutes, resolving any ambiguities regarding the existence of removal jurisdiction in favor of remand." *Id.* at 300-01 (quoting *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 127 (D.D.C. 2013)). "The party seeking removal of an action bears the burden of proving that jurisdiction exists in federal court." *Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 56 (D.D.C. 2017) (quoting *Downey v. Ambassador Dev., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C. 2008)).[1]

Absent diversity of citizenship, federal question jurisdiction is required to establish that a case could have originally been filed in federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)).

### B. Preemption under Section 301

"One corollary of the well-pleaded complaint rule . . . is that Congress may so completely pre-empt a particular area that any civil complaint raising [a] select group of claims is

---

[1] Pepco argues that the presumption against removal should not apply because the cases Brown cites for this proposition, Remand Mot. at 6-7, refer to general removal statutes, such as 28 U.S.C. § 1441, not cases involving Section 301 preemption, Remand Opp. at 2. But Pepco removed this case pursuant to 28 U.S.C. § 1441. Removal Not. at 1. And courts in this Circuit have applied the presumption against removal to Section 301 cases. *See, e.g.*, *Dist. No. 1*, 75 F. Supp. 3d at 300.

necessarily federal in character." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-64 (1987). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar,* 482 U.S. at 393.

This corollary "is applied primarily in cases raising claims pre-empted by § 301 of the LMRA." *Id.* Section 301 of the LMRA provides in relevant part that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). While the text of Section 301 speaks only of "contracts between an employer and a labor organization," the "Supreme Court has read section 301 expansively to include individual collective bargaining workers' claims." *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799 (6th Cir. 1990) (citing *Smith v. Evening News Ass'n*, 371 U.S. 195, 200-01 (1962)); *see also Cephas v. MVM, Inc.*, 520 F.3d 480, 485 (D.C. Cir. 2008) ("[A]n employee may sue an employer under § 301 . . . .").

In passing the LMRA, Congress "authorize[d] federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 451 (1957)). As such, the preemptive force of Section 301 is so "extraordinary . . . that [it] converts an ordinary state common law complaint into one stating a federal claim . . . ." *Metro. Life*, 481 U.S. at 65; *see also Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983) ("Any such suit is purely a creature of

5

federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.").

Section 301's preemptive effect encompasses a state-law claim (1) if resolution of that claim is "substantially dependent" on, or "inextricably intertwined" with, the terms of a collective-bargaining agreement, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220 (1985), or (2) if the claim "requires the interpretation of a collective-bargaining agreement," *Lingle*, 486 U.S. at 413. But "[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). "[I]t is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, . . . that decides whether a state cause of action may go forward." *Id.* at 123-24.

## III. Analysis

### A. Removal and Preemption under Section 301

Brown argues that his breach of contract claim is not preempted because he entered into an "independent" contract with Pepco. *See* Remand Mot. at 1, 7, 10. Pursuant to that purported contract, he would be promoted if he satisfied certain conditions, including acquiring a DOT medical card within six months of his hire date, which, in turn, required him to successfully pass a drug test. *See id.* at 1, 7, 10; Compl. ¶¶ 42-43. Brown asserts that evaluating this claim does not even require referencing the CBA, much less an "interpretation" or "substantial analysis" of it. Remand Mot. at 7.

In response, first, Pepco argues that as a general matter, state-law breach of contract claims are preempted when they involve promotion to or termination from positions covered by a collective bargaining agreement. Remand Opp. at 3-6; Def's MTD at 9-11. Second, it argues that Brown's claim will require interpretation of the CBA, including its provisions addressing

6

management rights, promotion, suspension and discharge, and grievance procedures. Remand Opp. at 5-6.

The Court concludes that Pepco is correct on both counts. Cases are legion holding that when an employee is covered by a CBA and seeks to avoid termination from a covered position or promotion to another covered position, his state-law claims for breach of contract are preempted by Section 301 because he does not have an independent source of contract rights apart from the CBA. *See, e.g.*, *Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 62-63 (2d Cir. 2010) ("As [plaintiff] identifies no other 'nonnegotiable rights' pertaining to the tenure review process that were 'conferred on [her] as a matter of state law,' we discern no error in the district court's conclusion that her breach of contract claim is preempted." (second alteration in original) (quoting *Livadas*, 512 U.S. at 123)); *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("[W]here the position in dispute is covered by the CBA, the CBA controls and any claims seeking to enforce the terms of [an agreement] are preempted." (second alteration in original) (internal quotation marks omitted)); *Fox*, 914 F.2d at 801 ("The collective bargaining process prohibits [a bargaining unit employee] from engaging in separate negotiations with the company and precludes any actions to enforce such an agreement. . . . [E]mployees covered by a CBA cannot rely upon the existence of a separate, individual employment contract giving rise to state law claims." (first alteration in original) (citations and internal quotation marks omitted)); *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir. 1989) ("A claim based upon an independent employment contract is not completely preempted if it concerns a job not governed by a collective bargaining agreement. . . . Since Chmiel's independent contract claim concerns a job position governed by the collective bargaining agreement, it is completely preempted by section 301." (citations omitted)); *Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d

325, 337 (E.D.N.Y. 2012) ("Where, as here, a plaintiff has not identified any source of her claimed contract rights other than a collective bargaining agreement, plaintiff's claims must be construed as preempted by LMRA § 301."); *Bachilla v. Pac. Bell Tel. Co.*, No. S-07-739 RRB KJM, 2007 WL 2825924, at *5 (E.D. Cal. Sept. 25, 2007) ("[B]ecause the subject matter of their implied contracts is a job position covered by the CBA, any independent agreement of employment concerning that position could be effective only as part of the collective bargaining agreement, thus the CBA controls and Plaintiffs' contract claim is preempted.").

In these types of cases, courts have held that breach of contract claims are "inextricably intertwined" or "substantially dependent" on the CBA, and therefore preempted. *See Ulrich v. Goodyear Tire & Rubber Co.*, 884 F.2d 936, 938 (6th Cir. 1989) (finding the "existence of the plaintiffs' so-called 'state law claim' [for breach of contract] is inextricably intertwined with the CBA"); *Shanefelter v. U.S. Steel Corp.*, 784 F. Supp. 2d 550, 559 (W.D. Pa. 2011) ("Plaintiff's breach of contract claim owes its existence to the collective bargaining agreement because it established the very rights plaintiff seeks to vindicate and the obligations forming the basis for her assertions of breach."); *McDonald v. Raytheon Aircraft Corp.*, 959 F. Supp. 1415, 1420 (D. Kan. 1997) ("[I]t is clear that [plaintiff's] implied employment contract claim is substantially dependent upon and inextricably intertwined with an analysis of the collective bargaining agreement. . . . While [plaintiff] would have the court don blinders and view . . . absence verification status in a vacuum, the court will not do so, nor has [plaintiff] submitted any authority suggesting that the court could do so.").

Tellingly, Brown "ha[s] failed to cite any case in which a court has allowed a breach of contract claim based on a contract independent of [a] CBA" when the plaintiff "was covered by a CBA at the time that the representations were made." *Nipper v. Garage Door Grp., Inc.*, No. 92-

4085-R, 1992 WL 331326, at *6 (D. Kan. Oct. 19, 1992). The cases he cites involve state-law claims other than breach of contract. *See* Remand Mot. at 8-9 (citing *Lingle*, 486 U.S. at 402, 410 (Illinois workers' compensation laws); *Livadas*, 512 U.S. at 111 (California wage and hour statute); *Allis-Chalmers Corp.*, 471 U.S. at 213-14 (bad faith tort claim, which was preempted); *Black v. NFL Players Ass'n*, 87 F. Supp. 2d 1, 4 (D.D.C. 2000) (common law tortious interference)). And cases where courts have found that breach of contract claims are not preempted involve "an employer [who] broke a promise made to an employee *before* the employee entered the bargaining unit or while the employee was outside the bargaining unit." *Henderson v. Merck & Co.*, 998 F. Supp. 532, 539 (E.D. Pa. 1998) (collecting cases). Unlike the plaintiffs in those cases, Brown "was a bargaining unit employee covered by the CBA at all times relevant to [his] breach of contract claim." *Birch v. Pepsi Bottling Grp., Inc.*, 207 F. Supp. 2d 376, 390 (D. Md. 2002). Thus, "[i]t is clear that [Brown's] individual employment contract claim is preempted by the LMRA as a matter of law." *Id.*

The Court also concludes, as Pepco argues, Remand Opp. at 6-7, that Brown's claim is preempted because it "requires the interpretation of a collective-bargaining agreement." *Lingle*, 486 U.S. at 413. Most notably, Brown alleges that Pepco breached an independent contract with him "when it relied upon [his] status as being on 'Decision Making Leave' as the basis for any action . . . relating to [him] and his promotion and/or retention as an employee" because that status "was limited by it[s] terms to issues related to timely arrival at work." Compl. ¶ 48. Evaluating this claim will clearly require the Court to interpret the scope of "Decision Making Leave" status as defined in the CBA, and the rights of the company to terminate employees

under it.  *See* CBA Article 16.   Thus, Brown's claim is preempted.[2]  *See, e.g.*, *Washington v. AlliedBarton Sec. Servs., LLC*, 217 F. Supp. 3d 208, 209 (D.D.C. 2016) (finding breach of contract claim regarding termination preempted where CBA was the source of defendant's right to terminate plaintiff), *aff'd in relevant part and remanded*, No. 16-7147, 2017 WL 4180147 (D.C. Cir. Aug. 2, 2017); *Berry v. Coastal Int'l Sec., Inc.*, 968 F. Supp. 2d 104, 112 n.4 (D.D.C. 2013) (finding claim preempted "because it depends in part upon analysis of the CBA").  And to the extent Brown argues that he has discharge-related rights that go beyond those in the CBA, his claims are still preempted.  *See Grandison v. Wackenhut Servs., Inc.*, 514 F. Supp. 2d 12, 17 (D.D.C. 2007) ( "[When plaintiff's] . . . common-law claims implicitly assert that his rights . . . are superior to [defendant's] rights under the CBA[, t]he only way such allegations could be adjudicated would be to interpret [defendant's rights] under the CBA."); *Chmiel*, 873 F.2d at 1285 (finding preemption where "alleged independent agreement is inconsistent with the express terms of the collective bargaining agreement . . . .").

### B. Amendment of the Complaint

In his motion, Brown argues in the alternative that he should be permitted to amend his complaint to include a claim under LMRA Section 301.  Remand Mot. at 12-13.

Once a court concludes that a plaintiff's state-law claim is preempted by Section 301, it may either (1) treat the claim as a Section 301 claim, or (2) dismiss the claim as preempted by federal labor-contract law.  *Allis-Chalmers Corp.*, 471 U.S. at 220.  If it is clear from the face of the complaint that the plaintiff has failed to use the CBA grievance procedures, courts often

---

[2] Pepco also suggests that other terms in the CBA, such as the management rights clause, the section addressing promotions, and the grievance and arbitration provisions are generally applicable here, even if they do not speak to the precise issue at hand.  *See* Remand Opp. at 6-7. In light of the Court's conclusion that Brown's breach of contract claim will require interpretation of the termination provisions in the CBA, it need not reach whether these provisions independently preempt Brown's claim.

10

dismiss the claim.  *Id.* at 220-21; *see also Bush v. Clark Const. & Concrete Corp.*, 267 F. Supp. 2d 43, 47 (D.D.C. 2003) ("Because plaintiff failed to adhere to the grievance process outlined in the CBA, the Court grants defendants' motion to dismiss.").

Here, Brown concedes that he failed to exhaust his administrative remedies under the CBA, but argues that amendment would not be futile because he can add a claim against his union for breach of the duty of fair representation that would excuse his failure to exhaust. Remand Mot. at 12-13 (citing *Vaca v. Sipes*, 386 U.S. 171, 187-88 (1967)).  Pepco argues, however, that Brown has failed to comply with Local Rules 7(i) and 7(m).  Remand Opp. at 9-10.  Local Rule 7(i) requires a copy of the proposed amended pleading to accompany any motion to amend.  And Local Rule 7(m) requires a party to meet and confer with opposing counsel before filing any nondispositive motion, and "to include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed."

Although Brown appears to provide an adequate justification to amend his complaint, Fed. R. Civ. P. 15(a)(2), he has indeed failed to comply with Local Rules 7(i) and 7(m) before requesting leave to amend.  Brown has not provided a copy of his proposed amended complaint, nor has he documented his compliance with his meet-and-confer obligations.  Thus, his motion will be denied without prejudice, insofar as it seeks to amend his complaint.  The Court will order Brown to file a renewed motion to amend his complaint that complies with the Local Rules within 30 days.

IV.  **Conclusion and Order**

For all of the above stated reasons, it is hereby ordered that Brown's Motion to Remand or Amend his Complaint, ECF No. 7, is **DENIED** as to remand and **DENIED WITHOUT PREJUDICE** as to the amendment of his complaint.  Brown shall file a motion to amend that

11

complies with the Local Rules within 30 days.  Pepco's Motion to Dismiss, ECF No. 5, is **DENIED AS MOOT**.

      **SO ORDERED.**

                                                   /s/ Timothy J. Kelly
                                                   TIMOTHY J. KELLY
                                                   United States District Judge

Date: March 30, 2018